Gibson, J.,
dissenting. Under Section 4141.29 (D) (1) (a), Revised Code, as it existed on November 7, 1959, a covered employee was not entitled to serve a waiting period or be paid unemployment compensation for any week with respect to which the administrator found that the unemployment was “due to a labor dispute” and “for so long as such labor dispute continues.” The term, “labor dispute,” was not defined by the General Assembly; therefore, it is our ultimate responsibility to define the term in the factual context of these cases.
The appellants in these cases are employees of the Republic Steel Corporation and members of the United Steel Workers of America, AFL-CIO. The union, as authorized bargaining representative of these employees, had entered into a collective bargaining agreement with the company, covering the wages, hours, and working conditions of the employees and which was due to expire by its terms on June 30, 1959. Industry-wide bargaining sessions began on April 10, 1959, between representatives of 12 steel companies, including Republic Steel, and the union.
A new agreement not having been reached by the expiration date of the old contract, the parties mutually agreed to extend the existing contract until July 14, 1959. On the latter date, no agreement had been reached, the extended contract expired, and on July 15 the appellants and their fellow employees ceased work in a strike.
On October 21, 1959, a Pennsylvania federal district court, acting under the emergency provisions of the Labor Management Relations Act, 1947, enjoined the union and its members from engaging further in the strike and ordered that as long as there was no new agreement the employees “shall be employed under the terms and conditions of all agreements in effect on June 30, 1959.” This injunction became effective on November 7, 1959, when it was affirmed by the United States Supreme Court. A new collective bargaining agreement was reached on January 4, 1960, within the 80-day period of the emergency injunction.
Counsel for Republic Steel in argument to this court stated that some 40,000 to 50,000 employees returned to work on November 7,1959. According to the stipulated facts, the operations of Republic Steel are such that once shut down they can *227 not be resumed immediately. The two employees involved in these cases, along with some 2,000 others, were recalled at the earliest possible date from the standpoint of production but in any event some weeks after November 7, 1959.
The appellants, who allege that they were ready, willing and able to return to work on November 7, 1959, applied for unemployment compensation from that date to the date when they were in fact recalled to work. The administrator alloAved ■ benefits on the ground that such employees were unemployed because of “lack of work.” The Board of Eeview, on its own motion, determined (two-to-one) that the employees were unemployed “due to a labor dispute” and hence were disqualified from receiving unemployment compensation.
This court clearly stated the proper premise for construing statutory language in paragraph one of the syllabus of Heidtman v. City of Shaker Heights (1955), 163 Ohio St., 109, when it said: “Where a statute is silent as to the meaning of a word contained therein and that word has both a wide and a restricted meaning, courts in interpreting such a statute must give such word a meaning consistent with other provisions of the statute and the objective to be achieved thereby.” Section 4141.46, Eevised Code, expressly provides that the Unemployment Compensation Act “shall be liberally construed.” See Adamski v. Bureau of Unemployment Compensation (1959), 108 Ohio App., 198.
The term, “labor dispute,” in the area of labor-management relations has a broad meaning. Disputes occur in the labor-management relationship with great frequency and over problems ranging from the trivial to the most vital. Obviously, the General Assembly did not intend to disqualify an employee for labor disputes about such matters as a job assignment, a pay raise, a discharge, a violation of a safety rule, or all of the myriad situations giving rise to a dispute between labor and management. The law was enacted to cover unemployment. Thus the term, “labor dispute,” should be restricted for the purpose of the Unemployment Compensation Act to a dispute between labor and management which causes unemployment. With this general standard in mind, consideration should be given to the statutory language and its legislative history.
The legislative purpose can be better understood by a com *228 parative examination of the 1955 and 1959 provisions regarding disqualifications from receiving unemployment compensation, which are set forth below in tabular form. The capitalized words were omitted by the 103rd General Assembly in 1959 and the italicized words were added:
1955
4141.29 (0) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits FOR THE DURATION OF ANY PERIOD OF UNEMPLOYMENT WITH RESPECT TO WHICH THE ADMINISTRATOR FINDS THAT SUCH INDIVIDUAL:
# # *
(2) LOST HIS EMPLOYMENT OR HAS LEFT HIS EMPLOYMENT BY REASON OF a labor dispute other than a lockout at a factory, establishment, or other premises at which he was employed, AS long as such labor dispute continues, AND THEREAFTER FOR A REASONABLE PERIOD OF TIME NECESSARY FOR SUCH FACTORY OR ESTABLISHMENT TO RESUME NORMAL OPERATIONS;
1959
4141.29 (D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions: (1) For any week with respect to which the administrator finds that:
(a) His unemployment was due to a labor dispute other than a lockout at the factory, establishment, or other premises at which he is or was last employed; and for so long as such labor dispute continues.
The first important change made in statutory language in 1959 was the substitution of the term “for any week,” in lieu of the term, “for the duration of any period of unemployment.” By this change it is clear that disqualifications are to be considered on a week-by-week basis, i. e., each week of disqualification must stand on its own footing. If a labor dispute *229 does not exist in the week in question, then benefits are payable. Unlike the majority I see no significant difference between the 1959 language, “for so long as such labor dispute continues,” and 1955 the language, “as long as such labor dispute continues.” The majority, however, disregards the deletion in 1959 of the most significant final clause of that sentence.
Prior to 1959, the labor dispute disqualification continued “for a reasonable period of time necessary for such factory or establishment to resume normal operations.” Unless we are to abandon the well-established presumption that the General Assembly will not do a vain or useless act, the deletion of this clause after being in existence for four years must be given significance. The only reasonable construction to be ascribed to the deletion of this very specific language is that the General Assembly intended to remove the disqualification for the period of time necessary to get the factory back to normal operation, regardless of the fact that there would have been no delay in normal production processes had there been no labor dispute.
Apparently, the primary purpose of the labor dispute disqualification is to prevent the Unemployment Compensation Act from being a factor in the causation or prolongation of labor disputes. In other words, the disqualification precludes the use of unemployment benefits as a weapon against an employer by using them to finance a strike against him. Here the strike ended on November 7, 1959, so the payment of unemployment benefits could not constitute a use of such benefits to finance a strike against Republic Steel.
By federal court order, effective November 7, 1959, the employment relationship continued under the terms and conditions of the collective bargaining agreements in effect on June 30, 1959. The only dispute which continued was over the terms and conditions of employment which would prevail in the future under a new contract. Negotiations for a future contract continued until a new agreement was reached within the 80-day “cooling off period.” These negotiations were no different from the negotiations which occurred prior to the strike. Without question, these negotiations did not cause unemployment in the weeks in question.
*230 I fail to understand how the negotiations of a future contract by parties, who by court order continue a work relationship governed by the terms and conditions of contracts in effect before the strike, can be said to constitute a “labor dispute” within the meaning of the Unemployment Compensation Act. Apparently, the federal district court was of the same opinion when it said in its order of January 26, 1960, that “there was and could be no dispute between the employer defendants and the union on November 7, 1959, or thereafter with respect to the employment status of the members of the United Steelworkers of America subject to this court’s injunction, for the period of this court’s injunction.” This is all the more difficult to understand where, as a practical matter, 40,000 to 50,000 employees were recalled immediately, and the remaining 2,000 employees (including the appellants) were not recalled to work because of the inability of the employer to get the production processes, where they worked, back in operation immediately.
In 1963, the General Assembly amended Section 4141.29 (D) (1) (a), Revised Code, by broadening the provisions for labor dispute disqualification by substituting the words, “and for so long as his unemployment is due to such labor dispute,” in lieu of the words, “and for so long as such labor dispute continues.” By this amendment the disqualification is at least as comprehensive as it was from 1955 to 1959. The court today by its construction of the words, “labor dispute,” has obliterated the difference in statutory standards which existed between 1959 and 1963 and has in effect retroactively applied the 1963 labor dispute disqualification. The majority opinion fails to take into consideration the plain fact that the only reason the appellants and 2,000 other employees, similarly situated, were not called back to work on November 7, 1959, when some 40,000 to 50,000 employees were recalled, was that there was no work for them because the factory was unable to resume full normal operations immediately.
In conclusion, I do not believe it is necessary that a collective bargaining agreement be executed in order to terminate a “labor dispute” within the meaning of Section 4141.29 (D) (1) (a), Revised Code. Rather, for the purpose of the Unemployment Compensation Act, the labor dispute terminated on *231 November 7,1959, when the 80-day emergency injunction granted under the Labor Management Belations Act, 1947, became effective.